UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)      No. 00 CR 503-1
VS. )      Judge Charles A. Norgle
)
ROLAND GRAY )

FILED

MAR      2002

Judge Charles
United States District Court

DOCKETED

MAR 0 5 2002

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, ROLAND GRAY, and his attorney, JAMES YOUNG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in cases numbers 00 CR 502-02 and 00 CR 503-01.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant,

ROLAND GRAY, and his attorney, JAMES YOUNG, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the indictment in case number 00 CR 502 with mail fraud, in violation of Title 18, United States Code, Sections 1341 and material false statements to an agency of the United States, in violation of Title 18, United States Code, Section 1001. Defendant also acknowledges that he has been charged in the indictment in case number 00 CR 503 with mail fraud, in violation of Title 18, United States Code, Section 1341, and tampering with a witness, in violation of Title 18, United States Code, Section 1512(b)(1).

2. Defendant has read the charges against him contained in both indictments, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Count One of the indictment in case number 00 CR 503.

5. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment in case number 00 CR 503. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

2

As charged in Count One of the indictment in case number 00 CR 503, defendant admits that he knowingly devised and intended to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and omissions.

In order to execute this scheme, defendant ROLAND GRAY, together with codefendants Alice Gray, Elijah Gray, Christopher Gray, David Esper, and Jacob Graves, as well as Stephanie Hobson and Ronald Crosby, made false statements to multiple insurance companies to obtain insurance policies, and then submitted fraudulent claims on those policies. It was further part of the scheme that, at defendant ROLAND GRAY'S direction, defendant Edwin McDonald, a chiropractor, supplied false and fraudulent information to insurance companies in support of fraudulent claims of injury and disability made by the defendants and their co-schemers.

The fraudulent insurance applications submitted by ROLAND GRAY included the following:

•On an automobile insurance application to American Service Insurance Co. dated December 18, 1989, ROLAND GRAY fraudulently stated that he had not had any accidents, and neither he nor any driver that would be covered by this policy had any accidents or moving violations within the past 36 months. In fact, ROLAND GRAY had reported three accidents which had allegedly occurred on November 14, 1986, October 16, 1988, and May 5, 1989.

3

•In an automobile insurance application to Aetna Life & Casualty Co. dated March 29, 1990, ROLAND GRAY fraudulently stated that during the past 36 months neither he nor any other driver currently residing in his household had been involved in an auto accident while operating any private passenger auto resulting in property damage to any property, or any bodily injury including to himself. In fact, ROLAND GRAY had reported two accidents which had allegedly occurred on October 16, 1988, and May 5, 1989, and in connection with which ROLAND GRAY had claimed injuries and property damage.

•In an application for hospital and travel policies to Liberty National Life Insurance Co. dated February 5, 1991, ROLAND GRAY falsely stated that within the past two years, he had not been hospitalized for a disease or disorder involving his back or spine. In fact, ROLAND GRAY had been hospitalized for lumbosacral strain, among other things, at Michael Reese Hospital from July 21, 1990, to July 26, 1990.

•In an application for a health and income policy to State Farm Insurance Co. dated March 13, 1993, ROLAND GRAY falsely stated that within the last ten years he had not been told he had, or been treated for any injury or disorder of the spine, neck or back, jaw, arm, leg, shoulder, wrist, hand, hip, knee, ankle, or foot; that within the last five years for any reason not already explained he had not consulted any doctor, chiropractor, psychologist, or other medical practitioner, nor had been treated or confined in a hospital

4

or clinic; and within the last three years he had not claimed or received any insurance or government benefits because of injury, sickness, or disability. In fact, ROLAND GRAY had complained of, and been treated for, those very injuries numerous times during the preceding ten years; he had consulted doctors, chiropractors, and other medical practitioners, and had been treated in hospitals and clinics numerous times during the preceding five years; and he had claimed and received in excess of $50,000 in insurance benefits during the preceding three years.

• In an application for a health and income policy to Country Companies dated March 22, 1993, ROLAND GRAY falsely stated that he neither had nor was applying for any other medical or disability insurance coverage, he had never received or claimed indemnity benefits or a pension for any injury, sickness, or impaired condition; within the past five years he had not, for any reason not already explained on the application, had a surgical operation, been hospitalized or been advised to have an operation, or consulted a doctor, chiropractor, psychologist, or other medical practitioner; he had no accidents or motor vehicle violations in the past five years; the last doctor he had seen was in 1975 for a general checkups and he had no other disability income or salary continuation insurance. In fact, at the time of this application, ROLAND GRAY already had three disability policies, he had claimed and received indemnity benefits for alleged injuries in the amount of no less than $37,000; he had consulted doctors and chiropractors

5

numerous times for alleged injuries and had claimed to have had twelve accidents during the preceding five years.

• In an application for an automobile policy to Union Auto Indemnity Association dated September 2, 1993, and in another automobile policy to Union Auto Indemnity Association dated September 17, 1993, ROLAND GRAY fraudulently stated that during the past five years he had not been involved in any accidents or violations, and had not been involved in any accidents as a driver regardless of fault. In fact, ROLAND GRAY had claimed to have been involved in fourteen accidents during the preceding five years.

• In an application for an automobile policy in the name of New Bethel Baptist Church to American Family Insurance Co. dated May 25, 1994, ROLAND GRAY fraudulently stated that during the last three years no driver on the policy had any auto accidents, losses, or claims, including for vehicle theft, and no driver had any mental or physical impairments or had seen a doctor for any neck or back problems. In fact, during the preceding three years, ROLAND GRAY had reported auto accidents, losses, and claims on no less than eleven occasions, and he had seen a doctor for neck or back problems numerous times.

• In an application for a homeowners policy to American Family Mutual Insurance Co. dated May 31, 1994, ROLAND GRAY falsely stated that neither he nor any member of his household had ever been convicted of a felony, and he had not sustained any losses at any location. In fact, ROLAND GRAY had been convicted of a felony in

6

1979, and he claimed to have sustained losses on two occasions at his residence on Vincennes in Harvey, Illinois.

•In an application for a credit disability policy to Union Fidelity Life Insurance Co. effective May 27, 1995, ROLAND GRAY fraudulently stated that he had not had medical advice or treatment for any back disorder during the past twelve months. In fact, ROLAND GRAY had reported disability caused by a back injury in August, 1994, and had alleged that he had been under a doctor's care for that disability for a year.

The fraudulent insurance claims submitted by ROLAND GRAY included the following: a claim to Physicians Mutual Insurance Co. for losses arising out of an alleged accident which occurred on or about February 5, 1991; a claim to Liberty National Life Insurance Co. for losses arising out of an alleged accident which occurred on or about February 5, 1991; a claim to American States Insurance Co. for losses arising out of an alleged accident which occurred on or about February 5, 1991; a claim to Life Insurance Company of Georgia for losses arising out of an alleged accident which occurred on or about February 12, 1992; a claim to Life Insurance Company of Georgia for losses arising out of an alleged accident which occurred on or about June 13, 1992; a claim to Country Companies for losses arising out of an alleged accident which occurred on or about June 7, 1993; a claim to Union Auto Indemnity Association for losses arising out of an alleged accident which occurred on or about March 9, 1994; a claim to American International Companies for losses

7

arising out of an alleged accident which occurred on or about June 7, 1995; a claim to American Family Mutual Insurance Co. for losses arising out of an alleged accident which occurred on or about July 16, 1995; a claim to Illinois Founders Insurance Co. for losses arising out of an alleged accident which occurred on or about June 18, 1996; a claim to Warrior/Valor Insurance Co. for losses arising out of an alleged accident which occurred on or about June 18, 1996; claims to Farmers Insurance Group for losses arising out of an alleged accident which occurred on or about June 18, 1996; a claim to St. Paul Fire and Marine Insurance Co., also known as Economy Fire and Casualty Co., for losses arising out of an alleged accident which occurred on or about September 1, 1997; a claim to St. Paul Fire and Marine Insurance Co. for losses arising out of an alleged accident which occurred on or about April 13, 1998. In fact, these accidents either did not occur, or did not occur to the extent claimed, and ROLAND GRAY did not sustain any losses.

ROLAND GRAY obtained the following loans and insurance policies:

•On or about August 19, 1989, he obtained a loan from Beverly Bank in the amount of $8,632.92 and a disability policy from The Credit Life Insurance Co, later known as Union Fidelity Life Insurance Co., insuring the repayment of that loan. Shortly thereafter, he submitted a claim for losses arising out of an alleged accident which occurred on or about September 26, 1989.

•On or about February 7, 1992, ROLAND GRAY obtained a loan from Devon Bank in the amount of $17,131.31 and a disability policy from Individual Assurance Co. insuring the repayment of that loan. Shortly thereafter, he falsely claimed that he was disabled due to injuries arising out of alleged accidents which occurred on or about February 12, 1992 and June 13, 1992.

•On or about July 12, 1994, ROLAND GRAY obtained a loan from GMAC in the amount of $12,410.54 and a disability policy from Southwest Reinsurance Co. insuring the repayment of that loan. Shortly thereafter, he falsely claimed that he was disabled due to injuries arising out of an alleged accident which occurred on or about August 3, 1994.

•On or about July 29, 1994, ROLAND GRAY obtained a loan from Devon Bank in the amount of $5,147.41 and a disability policy from Individual Assurance Co. insuring the repayment of that loan. Shortly thereafter, he falsely claimed that he was disabled due to neck and back injuries arising out of an alleged accident which occurred on or about August 3, 1994.

•On or about July 29, 1994, ROLAND GRAY obtained a loan from South Holland Trust and Savings Bank in the amount of $7,440.72 and a disability policy from USLife Credit Life Insurance Co. insuring the repayment of that loan. Shortly thereafter, he falsely claimed that he was disabled due to injuries arising out of an alleged accident which occurred on or about August 3, 1994.

•Between May 23rd and May 27th, 1995, ROLAND GRAY obtained five loans and disability policies insuring the repayment of these loans: On or about May 23, 1995, he obtained a loan from Eagle Finance Co. in the amount of $16,915.77 and a disability policy from Protective Life Insurance Co. insuring the repayment of that loan. On or about May 23, 1995, he obtained a loan from Cole Taylor Bank in the amount of $7,224.13 and a disability policy from Union Fidelity Life Insurance Co. insuring the repayment of that loan. On or about May 25, 1995, he obtained a loan from Highland Community Bank in the amount of $7,189.22 and a disability policy from USLife Credit Life Insurance Co. insuring the repayment of that loan. On or about May 26, 1995, he obtained a loan from LaSalle Talman Bank in the amount of $6,315.89 and a disability policy from USLife Credit Life Insurance Co. insuring the repayment of that loan. On or about May 27, 1995, he obtained a loan from South Holland Trust and Savings Bank in the amount of $19,785.18 and a disability policy from Union Fidelity Life Insurance Co. insuring the repayment of that loan. Shortly thereafter, ROLAND GRAY falsely claimed pursuant to each of these five disability polices that he was disabled due to injuries arising out of an alleged accident which occurred on or about June 7, 1995.

•On or about July 14, 1997, ROLAND GRAY obtained a loan from TCF National Bank in the amount of $7,253.80 and a disability policy from Union Fidelity Life Insurance Co. insuring the repayment of that loan. Shortly thereafter, ROLAND GRAY falsely claimed that he

10

was disabled due to neck injuries arising out of an alleged accident which occurred on or about July 17, 1997.

In fact, these accidents did not occur, and ROLAND GRAY suffered no disabilities. ROLAND GRAY also directed codefendants Alice Gray, Elijah Gray, Christopher Gray, David Esper, Jacob Graves, and others to submit fraudulent claims to insurance companies as part of this scheme. He advanced money to his coschemers so that they could obtain loans and corresponding disability policies. ROLAND GRAY's coschemers not only repaid the money he had advanced to them, but also shared with him fraudulent insurance payments which they had obtained by falsely claiming to have been injured in accidents. ROLAND GRAY paid codefendant Edwin McDonald, a chiropractor, to provide false information to insurance companies regarding ROLAND GRAY's and his coschemers' diagnosis, treatment, and treatment histories. ROLAND GRAY and his coschemers obtained in excess of $400,000 in satisfaction of their fraudulent insurance claims.

On or about July 14, 1995, in the Northern District of Illinois, Eastern Division, defendant ROLAND GRAY, for the purpose of executing this scheme to defraud and attempting to do so, placed and caused to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service according to the directions thereon, an envelope addressed to Financial Insurance Service Center, Attention: Claims Department, 4890 Street Road, Trevose, PA 19049, with a return address of Elijah

11

Gray, 182 East 154th, Harvey, IL 60426, containing a claim for disability benefits for codefendant Elijah Gray.

6. The defendant also acknowledges that the following conduct, to which he stipulates, constitutes relevant conduct within the meaning of Guideline § 1B1.3:

(a) As charged in Count 16 of the indictment in case number 00 CR 503, On or about August 9, 1999, defendant ROLAND GRAY together with codefendant Elijah Gray met with codefendant Edwin McDonald at Dr. McDonald's office. Dr. McDonald indicated that he had received a federal grand jury subpoena. ROLAND GRAY urged McDonald not to go to the grand jury, but to pretend he was ill, because the government could not compel McDonald to testify if he was ill. Roland Gray urged McDonald to contact a doctor and to go to the hospital claiming chest pains. Elijah Gray asked if there was anything McDonald needed financially, if there was anything they could do for him. ROLAND GRAY then gave McDonald $60 and again urged him not to testify before the grand jury.

(b) As charged in Count One of the indictment in case number 00 CR 502, defendant admits that he knowingly devised and intended to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and omissions.

In order to execute this scheme, defendant ROLAND GRAY, together with co-defendant Alice Gray, applied for and collected Supplemental Security Income and Public Aid benefits to which they

were not entitled. As part of the scheme, defendant ROLAND GRAY represented that he was disabled, had no income and no assets, whereas in fact, he was not disabled, and had substantial income and assets.

Specifically, as part of the scheme, defendant ROLAND GRAY, accompanied by his wife, defendant Alice Gray who used the name Alice Galimore, applied for SSI benefits on April 3, 1997. ROLAND GRAY claimed that he was not married, but living alone in a room in Alice Galimore's house, renting it for $250 per month, and was mentally disabled. Alice Gray verified his disability, and claimed that she assisted him in his daily living chores. She requested to be the named payee. ROLAND GRAY was examined by a doctor to whom SSA sent him, and pretended to be suffering from a mental disability. On September 3, 1997, Alice Gray received a check for ROLAND GRAY in the amount of $3388 for benefits dating back to March, 1997, and they began to receive SSI benefits in amounts from $484 per month to $512 per month.

In fact, Alice Gray and ROLAND GRAY were married as of February 1993, and owned various assets, including the house at 14637 South Vincennes, Harvey, Illinois, where they lived with their children. From approximately August 1993 though approximately April 1998, Monumental Life Insurance Company made the mortgage payments for this property pursuant to Alice Gray's fraudulent claims of disability. ROLAND GRAY also owned various pieces of real property described below, had several cars, and was a signatory on various

13

bank accounts, which ROLAND and Alice GRAY used to pay personal bills as well as church related expenses. During the time that he was allegedly too mentally disabled to work or handle his own money, ROLAND GRAY controlled seven bank accounts.

Regarding real property, in addition to his home, ROLAND GRAY owned the building which housed his church at 182 East 154th Street, a house at 14445 South Peoria that he leased to a tenant in amounts from $550 per month in 1995 to $700 per month in 2000, a house at 9952 South Troop where members of his family lived, and a house at 15038 South Marshfield which he sold in February, 1999. In 1997, ROLAND GRAY, with Alice Gray's assistance, purchased a house at 14817 S. Marshfield, which they also leased to a tenant. In addition to approximately $335 which he received in rent from the tenant at 14817 S. Marshfield each month, ROLAND GRAY received $500 per month from HUD. Furthermore, ROLAND GRAY was never disabled either physically or mentally to such a degree that he would qualify for SSI benefits.

The scheme operated from at least October 1995 through at least June 2000. The total amount of the loss and attempted loss attributable to this scheme is at least $48,566.

On or about October 1, 1997, in the Northern District of Illinois, Eastern Division, defendant ROLAND GRAY, for the purpose of executing this scheme to defraud and attempting to do so, caused the Social Security Administration to send through the mail a check in the amount of $484 representing SSI benefits to which he was not

entitled, addressed to Alice Galimore for Roland Gray, P.O. Box 1448, Harvey, Illinois 60426.

7. For purposes of applying the guidelines promulgated by the United States Sentencing Commission, pursuant to Title 28, United States Code, Section 994, the parties agree on the following points:

(a) The parties agree that the 11/1/94 Guidelines Manual, which was in effect on the date of the offense of conviction, applies in this case.

(b) The parties further agree that Count One of case 00 CR 503 and the offenses to which the defendant has stipulated in paragraph 6 should be grouped as closely related pursuant to Guideline § 3D1.2 (d).

(c) The parties further agree that the base offense level for this offense is 6, pursuant to Guideline § 2F1.1(a);

(d) The parties further agree that the intended loss foreseeable to defendant ROLAND GRAY exceeded $500,000 but was less than $800,000; therefore, pursuant to Guideline § 2F1.1(b)(1), a ten-level upward adjustment is appropriate.

(e) The offense involved more than minimal planning and was a scheme to defraud more than one victim; therefore, pursuant to Guideline § 2F1.1(b)(2)(A) a two-level upward adjustment is appropriate.

(f) The defendant was an organizer and leader of a criminal activity that involved five or more participants and was otherwise

extensive; therefore pursuant to Guideline § 2F1.1(b)(1), a four-level upward adjustment is appropriate.

(g) Defendant willfully attempted to obstruct of impede the administration of justice during the course of the investigation as described in paragraph 6 above, and the obstructive conduct related to the offense of conviction and relevant conduct; therefore, pursuant to Guideline § 3C1.1, a two-level upward adjustment is appropriate.

(h) The defendant maintains that he has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. The government disagrees with this position. If the Court finds that the defendant has demonstrated acceptance of responsibility for his criminal conduct within the meaning of Guideline 3E1.1, a two-level reduction in the offense level is appropriate;

(i) The defendant maintains that he has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, within the meaning of Guideline § 3E1.1(b). The government disagrees with this position. If the Court finds that the defendant has demonstrated acceptance of responsibility within the meaning of Guideline 3E1.1, and that he has timely notified the government of his intention to plead guilty, an additional one-point reduction in the offense level would be appropriate, provided the court

16

determines the offense level to be 16 or greater prior to the operation of Guideline § 3E1.1(a);

(j) On or about June 15, 1979, defendant was convicted of theft and perjury in Cook County, Illinois and sentenced to three years incarceration (two years on one count and three years concurrent on the other count). Therefore, based on facts known to the government and pursuant to Guideline 4A1.1(a), the defendant's criminal history points equal 3 and the defendant's criminal history category is II;

(k) Defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Plea Agreement. Defendant understands that the United States Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Plea Agreement is not contingent upon the United States Probation Officer's or the Court's concurrence with the above calculations. Defendant understands that the Court is required to consider the applicable Sentencing Guidelines but may depart from those Guidelines under some circumstances.

8. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the United States Probation office

17

and/or Court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such supplements or corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

9. Defendant understands the charges to which he will plead guilty carry the following penalties:

(a) Count One carries a maximum penalty of five years' imprisonment, a maximum fine of $250,000 or twice the gross gain from the offense or the gross loss from the offense, whichever is greater, and any restitution ordered by the Court.

(b) This charge also carries a term of supervised release of at least two but not more than three years, which the Court may specify.

10. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $50 on the charges to which he has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $50 at the time of sentencing with a cashier's check or money order made payable to the Clerk of the United States District Court.

11. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial on each of the indictments. The trials could be either jury

18

trials or trials by the judge sitting without a jury. The defendant has a right to jury trials. However, in order that either or both of the trials be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If either or both of the trials were jury trials, the jury in each trial would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. Each jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. Each jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt. Each jury would also be instructed that it was to consider each count separately.

(c) If the trials were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence

in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

12. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. The defendant is also aware that Title 18, United State Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal any sentence within the guideline range, in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

13. Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from the defendant.

14. Defendant understands that the indictments and this Plea Agreement are matters of public record and may be disclosed to any party.

15. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

16. At the time of sentencing, the government will recommend the imposition of any sentence it deems appropriate within the applicable guideline range.

17. Regarding restitution, the parties agree that the amount of restitution owed to insurance companies named in the Victim Restitution Memorandum, attached hereto as Exhibit A, by the defendant and other individuals, is approximately $ 402,130. The defendant further acknowledges that pursuant to Title 18, United States Code, Section 3663A the court must order restitution in this amount, minus any credit for funds repaid prior to sentencing. The parties also agree that pursuant to 18 U.S.C. § 3663(a)(3), the court shall order restitution to the Social Security Administration, the Illinois Department of Public Assistance, and the Department of

21

Health and Human Services in the amount of $48,566 for the conduct described in paragraph 6 above. The defendant understands that Title 18, United States Code, Section 3664 and the Sentencing Guidelines Sections 5E1.1 and 5E1.2 set forth the factors to be weighed in setting a fine and in determining the schedule, if any, according to which restitution is to be paid in this case. The defendant agrees to provide full and truthful information to the court and United States Probation Officer regarding all details of his economic circumstances in order to determine the proper restitution schedule according to which the defendant may be ordered to pay. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

18. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and, subject to the limitations of the sentencing guidelines, may impose the maximum penalties as set forth in paragraph 9 above. The defendant further acknowledges that if the court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

19. After sentence has been imposed on Count One of 00 CR 503, to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining charges against this defendant in case 00 CR 503, and will move to dismiss all of the charges against him in case 00 CR 502.

22

20. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. He further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or to re-sentence defendant. Defendant understands and agrees that in the event that this Plea Agreement is breached by defendant, and the Government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

21. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

22. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

23. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant

23

further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _3-1-2002_

PATRICK J. FITZGERALD
United States Attorney

ROLAND GRAY
Defendant

VILIJA A. BILAISIS
Assistant United States Attorney

JAMES YOUNG
Attorney for Defendant

24

## Victim Restitution Memoranda

| Victim's Name | Loss Amount |
|---|---|
| Aetna Life & Casualty Co. & Travelers Property | $ 10,957 |
| AIG Aviation | $ 6,389 |
| Allstate Insurance Co. | $ 11,561 |
| American Family Insurance Co. | $ 5,543 |
| American International Companies | $ 10,273 |
| American States Insurance | $ 2,856 |
| Assurant Insurance (for Mercury Finance) | $ 3,000 |
| Assurant Insurance (for Circuit City) | $ 683 |
| Church Mutual | $ 8,448 |
| Country Companies | $ 15,965 |
| Crown Life Insurance (for Mancarry Imports) | $ 8,709 |
| Crown Life (for Chrysler Credit) | $ 18,134 |
| Farmers Insurance Group | $ 7,009 |
| Hartford Insurance Co. | $ 12,300 |
| Independent Life | $ 70 |
| Individual Assurance Co. | $ 20,176 |
| J.C. Penney | $ 500 |
| Liberty National Life Insurance Co. | $ 2,433 |
| Life Insurance Company of Georgia | $ 12,436 |
| Manufacturer's Life (for South Holland Dodge) | $ 17,389 |
| Monumental Life Insurance Co./Aegon | $ 31,177 |
| Mutual of Omaha Insurance Co. | $ 347 |
| National Car Rental Systems | $ 1,200 |
| Omni | $ 9,053 |
| Physicians Mutual Insurance Co. | $ 617 |
| Principal Casualty | $ 16,737 |
| Protective Life (for Heritage Bank & Palos Bank) | $ 13,377 |
| Progressive | $ 148 |
| Safeco | $ 1,139 |
| Safeway | $ 750 |
| Southwest Reinsurance Co. | $ 10,380 |
| St. Paul Fire And Marine Insurance Co. | $ 16,110 |
| State Farm Insurance Policy | $ 2,894 |
| Superior | $ 2,408 |
| Union Auto Indemnity Assoc. | $ 34,549 |
| Union Fidelity Life Insurance Co. | $ 12,784 |
| USCredit Life Insurance Co. | $ 71,254 |
| Warrior/Valor Insurance Co. | $ 2,375 |
| TOTAL RESTITUTION TO INSURANCE COMPANIES | $402,130 |
| | |
| Illinois Department of Public Assistance | $ 15,133 |
| U.S. Department of Health and Human Services | $ 15,133 |
| Social Security Administration | $ 18,300 |
| TOTAL RESTITUTION TO GOVERNMENT AGENCIES | $ 48,566 |
| | |
| TOTAL RESTITUTION | $450,696 |

EXHIBIT A